IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>vs.<br><br>MICHAEL BRADFORD,<br><br>      Defendant. | ORDER AND MEMORANDUM DECISION<br><br><br><br>Case No. 1:06 CR 15 |

  During an ongoing investigation into a shooting that occurred at the residence of Defendant Michael Bradford, Utah state law enforcement officials discovered two silencers in the Bradford residence. After learning of the silencers, the U.S. Attorney filed charges against Mr. Bradford, alleging that Mr. Bradford violated 26 U.S.C. § 5861 by possessing silencers that lacked serial numbers and that were not registered to him.

  Mr. Bradford now moves to suppress the silencers, as well as additional items discovered at his residence. All of the evidence that Mr. Bradford seeks to suppress was seized during a second thorough search of Mr. Bradford's residence following the shooting. The second search, as with the first, was conducted under the authority of a warrant. The court concludes that officers executed the warrant authorizing the challenged search in good faith and without exceeding the warrant's scope. Accordingly, it is unnecessary to suppress the evidence found during that search. Defendant's Motion to Suppress is denied.

**Background**

After receiving a 911 call, deputies from Box Elder County, Utah, came to Mr. Bradford's residence. Shortly after their arrival, the deputies learned that Jeremy Bradford had suffered a gunshot wound. The information the deputies uncovered indicated that Mr. Bradford shot Jeremy Bradford. Mr. Bradford's parents were at the house when officers arrived, and Mr. Bradford's father, Jack Bradford, told officers that he had wrapped the gun used in the shooting in a sweatshirt and had placed the gun in a nearby hallway.

Detectives from the Box Elder County Sheriff's Office obtained a search warrant that enabled them to search for and process any physical evidence possibly connected with the shooting. While conducting that search, detectives discovered a shell casing in the living room of the home and a slug in the kitchen. The location of both the casing and the slug were consistent with the facts officers had ascertained through speaking with witnesses. Additionally, detectives found a .45 caliber firearm wrapped in a sweatshirt in a hallway in the home, exactly where Jack Bradford indicated he placed the weapon used in the shooting.

The next day, officers interviewed Debbie Bradford, Mr. Bradford's wife, about the incident. Ms. Bradford told officers that a .45 caliber handgun was used in the shooting. But Ms. Bradford was unable to tell officers what had happened to the firearm after the shooting occurred. Ms. Bradford also informed officers that she was uncertain whether Mr. Bradford had multiple firearms in the house.

A few days after interviewing Ms. Bradford, officers sought another search warrant for the Bradford residence. In the affidavit submitted in support of the search warrant application, Sergeant David Murphy stated that several deputies were aware of Mr. Bradford's interest in firearms and that Mr. Bradford was known to have a special fondness for .45 caliber handguns.

In fact, Sergeant Murphy stated that Mr. Bradford had previously shown deputies a military-style Colt .45. The firearm originally seized from the Bradford residence was .45 caliber, but was not a military-style Colt .45.

On the strength of Sergeant Murphy's affidavit, a new search warrant was issued. While executing that search warrant, officers seized a wide variety of items, many of which Mr. Bradford contends were outside the scope of the warrant's express language. During the second search officers recovered some .45 caliber ammunition and also discovered the two silencers that serve as the basis for this federal prosecution.

## Analysis

Mr. Bradford argues that the search that led to the discovery of the silencers was not supported by probable cause and that officers executing the warrant exceeded their authority be seizing items not encompassed within the scope of the warrant.[1] According to Mr. Bradford, officers had discovered, during the initial search of the residence, all of the evidence related to the shooting that was under investigation. Mr. Bradford contends that the second search of his home was nothing more than a "fishing expedition," conducted with the sole intent to seize firearms and firearm-related items. Mr. Bradford requests the suppression of the silencers and all additional items seized during the second search of his residence.

Mr. Bradford is correct that officers recovered evidence during the first search that was consistent with their knowledge of the facts relating to the shooting and that officers almost

---

[1]Mr. Bradford's attempts to suppress the silencers began with a request for a Franks hearing, which Judge Ted Stewart denied on September 28, 2006. (See Memorandum Decision & Order Denying Defendant's Request for Franks Hearing (dkt. #24).) Mr. Bradford's counsel then represented to the court during a hearing on Mr. Bradford's motion to suppress that a Franks hearing was not necessary but that the challenged search warrant was not supported by probable cause. In his memorandum in support of his motion to suppress, Mr. Bradford now confines his argument to the contention that the officers exceeded the scope of the second search warrant during the warrant's execution.

certainly believed that they had recovered all the necessary evidence. But the silencers discovered during the second search are admissible under the good-faith exception to the exclusionary rule recognized by the United States Supreme Court in United States v. Leon, 468 U.S. 897 (1984).

A.   The Leon Good Faith Exception

"In Leon, the [United States Supreme] Court held that evidence obtained pursuant to a constitutionally defective search warrant is admissible at trial if the officers executing the search warrant reasonably relied on the warrant and there is no evidence the officers misled the magistrate issuing the warrant." United States v. Angelos, 433 F.3d 738, 746 (10th Cir. 2006). In so holding, the Court recognized that "[p]enalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." Leon, 468 U.S. at 921. Accordingly, "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." Id. at 918.

When an officer relies on a warrant, it is presumed that the officer is acting in good faith. See United States v. Cardall, 773 F.2d 1128, 1133 (10th Cir. 1985) ("The first notion to be remembered in considering the good faith principle is the presumption created in Leon that when an officer relies on a warrant, the officer is acting in good faith."). Therefore, when an officer relies on a warrant, the good-faith analysis is confined to "the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." United States v. McKneely, 6 F.3d 1447, 1454 (10th Cir. 1993) (internal quotation omitted). "[W]hen reviewing an officer's reliance upon a warrant, we must

determine whether the underlying documents are 'devoid of factual support, not merely whether the facts they contain are legally sufficient.'" Id. (quoting Cardall, 773 F.2d at 1133).

The present case falls squarely within the good-faith exception recognized in Leon. It is true that officers conducted an initial search of the Bradford residence that resulted in the acquisition of all evidence related to the shooting that the officers expected to find. But after interviewing Ms. Bradford and after considering Mr. Bradford's known interest in .45 caliber firearms, officers deemed it advisable to seek a warrant authorizing an additional search of the Bradford residence to ensure that they recovered the firearm actually used in the shooting.

The affidavit submitted in support of the second warrant reveals that officers were concerned that the firearm found in the hallway may have not been the gun actually used in the shooting. In the affidavit, Sergeant Murphy points out that Mr. Bradford's father had apparently already moved a firearm away from the scene of the shooting before officers arrived. The overriding implication of Sergeant Murphy's statements in the affidavit was that officers could not be certain that Jack Bradford placed the firearm actually used in the shooting in the hallway or whether a different gun had been presented to officers as the gun used in the shooting.

Sergeant Murphy's affidavit is far from devoid of factual statements supporting the appropriateness of the additional search. To the contrary, his affidavit presents a coherent explanation of a developing investigation and makes a persuasive case for the advisability of a second search of the Bradford residence. Mr. Bradford does not claim that Sergeant Murphy made any false statements in his affidavit or otherwise attempted to mislead the issuing magistrate. Under the circumstances, officers executing the warrant were entitled to rely upon the magistrate's authorization of the search.

Further, although the officers seized a substantial amount of evidence during the second search, the evidence seized was within the scope of the warrant authorizing the search.  The warrant instructed officers to search for "[a]ny and all weapons and or ammunition that could have been used to inflict a gunshot wound to Jeremy Bradford."  (Search Warrant, attached as Ex. 1 to Stipulated Courtesy Copies of Warrants & Related Documents (dkt. #15).)  The inventory of seized items contains thirty-nine line items.  Thirty-two of those line items describe various types of seized ammunition.  With the exception of two glass pipes containing residue, the remainder of the seized items appear to be firearms of various types.[2]  Given the broad language authorizing the search, it is simply not the case that officers executed the warrant with a "flagrant disregard" for its scope.

Because application of the good-faith exception in this case resolves the question of the admissibility of the evidence, there is no need to assess the underlying validity of the warrant itself.  See, e.g., United States v. Price, 265 F.3d 1097, 1102 (10th Cir. 2001) ("If this court determines that officers acted in good faith[,] . . . it does not need to reach the issue of whether probable cause existed for the warrant."); United States v. Bishop, 890 F.2d 212, 216 (10th Cir.1989) ("[R]esolution of whether there was probable cause supporting the warrant is not necessary to our decision . . . because . . . the agents' conduct clearly falls withing the 'good faith exception' to the exclusionary rule.").

## Conclusion

For the foregoing reasons, Defendant's Motion to Suppress (dkt. #18-1) is DENIED.

---

[2]Any suggestion by Mr. Bradford that officers are not allowed to seize contraband items when such items are found during the execution of a lawful search lacks merit.  See United States v. Berry, 423 F.2d 142, 144 (10th Cir. 1970) ("We have held that when an officer in the execution of a valid search warrant comes upon evidence of another crime, he is not required to close his eyes to the realities of the situation.").

DATED this 2nd day of January, 2007.

                          BY THE COURT:

                          *Tena Campbell*

                          TENA CAMPBELL
                          United States District Judge